1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3                         No. 1:13-cr-10164-WGY-ALL

4

5

6    UNITED STATES OF AMERICA

7
     vs.
8

9    MICHAEL BOURQUE, et al

10

11

12                    *  *  *  *  *  *  *  *  *

13

14                    For Hearing Before:
                      Judge William G. Young
15

16                      Motion to Suppress

17
                      United States District Court
18                    District of Massachusetts (Boston)
                      One Courthouse Way
19                    Boston, Massachusetts 02210
                      Friday, February 14, 2014
20

21                    *  *  *  *  *  *  *  *

22
              REPORTER: RICHARD H. ROMANOW, RPR
23                    Official Court Reporter
                 United States District Court
24      One Courthouse Way, Room 5510, Boston, MA 02210
                    bulldog@richromanow.com
25

```
 1                    A P P E A R A N C E S

 2    MICHAEL I. YOON, ESQ.
          United States Attorney's Office
 3        J. Joseph Moakley U.S. Courthouse
          1 Courthouse Way, Suite 9200
 4        Boston, Massachusetts 02210
          (617) 748-3180
 5        Email: michael.yoon2@usdoj.gov
          For the United States
 6
      WILLIAM H. CONNOLLY, ESQ.
 7        20 Park Plaza, Suite 1000
          Boston, MA 02210
 8        Email: Whc@williamconnollylaw.com
          For Michael Bourque
 9
      JOHN G. SWOMLEY, ESQ.
10        Swomley & Tennen, LLP
          227 Lewis Wharf
11        Boston, Massachusetts 02110-3927
          Email: Jswomley@swomleyandtennen.com
12        For Robert Hagenaars

13    JOHN F. PALMER, ESQ.
          Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
14        Boston, Massachusetts 02109
          Email: Jpalmer@socialaw.com
15        For Brian Chisholm

16    DEREGE B. DEMISSIE, ESQ.
          Demissie & Church
17        929 Mass. Ave., Suite 01
          Cambridge, Massachusetts 02139
18        Email: Dd@demissiechurch.com
          For Phillip Goolst
19
      WILLIAM A. KORMAN, ESQ.
20        Rudolph Friedmann, LLC
          92 State Street, 8th floor
21        Boston, Massachusetts 02109
          Email: Wkorman@rflawyers.com
22        For Thomas Ehwa

23    E. PETER PARKER, ESQ.
          151 Merrimac Street
24        Boston, Massachusetts 02114
          Email: Peter@parkerslaw.com
25        For Frank McGuire
```

```
 1                        (Continued.)

 2    LESLIE FELDMAN-RUMPLER, ESQ.
          101 Tremont Street, Suite 708
 3        Boston, Massachusetts 02108
          Email: Lfedlmanr@aol.com
 4        For Michael Roy

 5    LIAM D. SCULLY, ESQ.
          101 Summer Street, Fourth Floor
 6        Boston, MA 02110
          Email: Liamdscully@aol.com
 7        For Sean Cotter

 8    DAVID J. APFEL, ESQ.
      ROBIN SCHWARTZ, ESQ.
 9        Goodwin Procter, LLP
          Exchange Place, 53 State Street
10        Boston, Massachusetts 02109
          Email: Dapfel@goodwinprocter.com
11        For Mark Newton

12    EDWARD J. McCORMICK, ESQ.
          McCormick & Maitland
13        195 Main Street, Suite Six - Hayward Manor
          Franklin, Massachusetts 02038
14        Email: Ejmccormick3@verizon.net
          For John Kinney
15
      DEVIN W. McBRIDE, ESQ.
16        One International Place, Suite 1820
          Boston, Massachusetts 02110
17        Email: Dvnmcbride33@gmail.ocm
          For Raymond Panaggio
18
      KEVIN L. BARRON, ESQ.
19        Rudolph Friedmann, LLC
          15 Broad Street, Suite 240
20        Boston, Massachusetts 02109-3804
          Email: Kevinbarronesq@gmail.com
21        For David Akasa

22

23

24

25
```

1                    P R O C E E D I N G S

2                    (Begins, 10:00 a.m.)

3                    THE COURT:  Good morning, counsel.

4                    MR. YOON:  Good morning, your Honor.

5                    THE COURT:  Let's call the case.

6                    THE CLERK:  Now hearing Criminal Matter

7        13-10164, the United States of America versus Bourque,

8        et al.

9                    THE COURT:  And just so we may have a complete

10       record, can I ask you again to introduce yourselves,

11       we'll start with the government.

12                   MR. YOON:  Yes, your Honor.  Michael Yoon for

13       the government.

14                   MS. FELDMAN-RUMPLER:  Good morning, your

15       Honor, Leslie Feldman-Rumpler for Michael Roy.

16                   MR. APFEL:  Good morning, your Honor, David

17       Apfel, and with me is Robin Schwartz from my office, and

18       Mark Newton is also present in court.

19                   THE COURT:  Okay.

20                   MR. BARRON:  Good morning, your Honor.  Kevin

21       Barron for David Akasa, who sits to my right.

22                   THE COURT:  Thank you.

23                   MR. PALMER:  John F. Palmer for Brian

24       Chisholm, um, waiving his presence, your Honor.

25                   MR. PARKER:  Peter Parker for Frank McGuire.

1  Good morning, your Honor.

2          MR. KORMAN:  Good morning, your Honor.

3  William Korman on behalf of Thomas Ehwa, who actually is

4  here, he just stepped out in the hall.  I'm sure he'll

5  be right back.

6          THE COURT:  Thank you.

7          MR. McBRIDE:  Good morning, your Honor.  Devin

8  McBride on behalf of Raymond Panaggio, who is also

9  present.

10          MR. CONNOLLY:  Good morning, your Honor.

11  Attorney Bill Connolly for Michael Bourque.

12          MR. McCORMICK:  Good morning, your Honor,

13  Edward McCormick John Kinney, who waives his presence

14  today.

15          MR. SCULLY:  Good morning, your Honor, Liam

16  Scully for Sean Cotter, who also waives his presence.

17          MR. SWOMLEY:  Good morning, your Honor, John

18  Swomley for Robert Hagenaars, who's present.

19          MR. DEMISSIE:  Good morning, your Honor,

20  Derege Demissie for Phillip Goolst, and he waives his

21  presence today.

22          THE COURT:  And, Mr. Demissie, the clerk

23  explains to me that you may have to leave, and

24  Ms. Feldman-Rumpler will cover for you, and that's

25  fine.  If you have to leave, just get up and leave.

1          MR. DEMISSIE:  Thank you, your Honor.

2          THE COURT:  Okay.

3      Let me, um, simply to, I think, concentrate the

4  argument, because what I'm going to take up first is the

5  motion to suppress of Mark Newton in which various of

6  the defendants join.  I don't see this as a motion to

7  suppress at all, rather it's a motion directed to the

8  admissibility of evidence.  And reading the papers --

9  and I have read the papers, it appears to me -- but my

10  mind is open on anything that I may say now, but it

11  appears to me the statute's been violated and the

12  question is then what?

13      It doesn't appear that the statute has been

14  violated in some sort of invidious cover-up fashion,

15  rather it appears that the statute's been violated

16  through inadvertence, inattentiveness to the statute's

17  commands.  So it is highly unlikely that the result

18  would be suppression of what may well be otherwise

19  extremely probative evidence.  Instead the issue is a

20  quite appropriate challenge to the admissibility of that

21  evidence which places on the government the burden to

22  turn their corners very square with respect to proving

23  up that admissibility.  They're going to have to take

24  the, um, wiretap, the evidence of the wiretap, however

25  it is collected, on disk or otherwise, and go from the

 1   street, if you will, into the courtroom proving up every

 2   step of the way.

 3        Now, their proof, as far as the Court is

 4   concerned, need only be by a fair preponderance of the

 5   evidence because it's a preliminary finding of fact that

 6   allows the Court to make a ruling on the admissibility

 7   of evidence.  So the question is when shall we do that?

 8   And it may be that the defense wants some sort of

 9   evidentiary hearing on that prior to the trial.  I don't

10   propose to grant that.  Rather, in light of this

11   challenge, the government's going to have to prove that

12   up at trial.  In most trials, that's not an issue.  In

13   this trial, it may be.  And so the government will have

14   to prove it.  I will make my preliminary finding and

15   ruling, um, once they've had their chance to do that.

16   Now, if that goes against the government, here's the

17   problem the government faces because of my approach and

18   their violation of the statute.

19        Let's say there is something -- I consider this

20   highly unlikely, but possible, something invidious about

21   this or let's say the government can't cover a step.

22   Well, if they can't cover a step, the result is clear,

23   the evidence is inadmissible because we can't say that

24   the data in court is reflective of what went on in the

25   field, but we'll only know that after jeopardy has

1    attached, because I'm not doing this twice.  The, um --

2    and that's the downside risk to the government.

3        The defense may well say, "Well, Judge, we're

4    entitled to know whether you're going to admit this

5    evidence," and there's merit to that.  Only, I will tell

6    you, I have read these materials and affidavits and the

7    like and they are the typical proffer that is made in

8    order to support the admissibility of evidence, and

9    while the defense has every right, a confrontation

10   clause right to challenge it at trial, if you press me

11   now I'm inclined to rule that -- to find on the

12   affidavits and rule that the evidence is admissible

13   subject of course to what comes out at trial when we're

14   actually looking at witnesses and everyone gets a chance

15   to cross-examine them.

16       Now, there's other things we need to discuss and

17   that is not a ruling, I'm eager indeed to hear argument,

18   but I thought it would be helpful to explain to you

19   what's in my mind when I come on the bench.

20       So, Mr. Apfel, I think you're the lead on this.

21   Have I -- well, what about that analysis?

22           MR. APFEL:  Well, I think you're wrong, your

23   Honor.

24           THE COURT:  Okay, I'll hear you.

25           MR. APFEL:  Because for starters, the

1    government has a burden of proof to establish a -- that

2    it complied with the statute, which clearly it didn't.

3              THE COURT:  Well, I'm not now making rulings,

4    but it looks like they didn't.

5              MR. APFEL:  And then they have the burden to

6    establish -- to come forward with a satisfactory

7    explanation.

8              THE COURT:  Correct.

9              MR. APFEL:  Now, your Honor said that he read

10   the "affidavits and the like".  If there were

11   affidavits, perhaps the analysis of your Honor would be

12   correct, but we don't have any affidavits here, we have

13   nothing except bald assertions by the government.  We

14   don't have any evidence, we don't have the necessary

15   clear and convincing evidence that the integrity of the

16   tapes have been maintained.

17         You know, your Honor said that it doesn't seem as

18   if anything invidious here happened, there was anything

19   -- you know, there was any attempt to corrupt the tapes,

20   that the integrity of the tapes is probably intact.

21   That may well be the case, but we don't know, and that's

22   because the government has come forward with nothing.

23   It's come forward with papers in which Mr. Yoon says he

24   spoke to various and sundry agents, the very agents who,

25   I would suggest, would have the inclination, certainly

1    the ability to tamper with the tapes because they were

2    the ones who were in possession of the tapes and had

3    access to them.  The government said, "Oh, trust me,

4    these are good agents, they're solid agents, and it was

5    only five days in one case, five days in another case,

6    seven days in another case, no big deal, take our word

7    for it."  Well, that's not good enough.  And the statute

8    --

9          THE COURT:  Of course it's not good enough in

10   the sense that I'm not making any finding or ruling, I'm

11   simply explaining to you when I propose to make it.

12         MR. APFEL:  But it's a question of the issue

13   of timing.  There are two questions on timing.  One,

14   before the government can even get to trial, it has to

15   at least make the preliminary necessary showing that

16   there's a satisfactory explanation.

17         THE COURT:  Well, an officer of the court

18   files his brief, explains things, um, you think that

19   bars a trial?  What is the authority that I've got to

20   embark on some evidentiary hearing here even if the

21   statute was violated?

22         MR. APFEL:  Because the statute itself -- the

23   statute itself, the specific provision has embedded

24   within it an exclusionary remedy, it's own specific

25   exclusionary remedy specific to Section 2518(8)(a) and

1     *Mora* talks about that exclusionary remedy that is

2     embedded within that specific provision of that statute.

3                THE COURT:  Well, respectfully, and I don't

4     express any, um, disagreement with *Mora*, but I'm not

5     bound by *Mora,* am I?

6                MR. APFEL:  Oh, you are bound by *Mora.*  Last

7     time I checked, *Mora* is the controlling authority within

8     the First Circuit.

9                THE COURT:  I stand corrected.  You're right.

10                MR. APFEL:   *Mora* is consistent with the

11     Supreme Court's decision three years later in *Ojeda*

12     *Rios*, which really tracks *Mora* almost word for word.  So

13     I think you are bound by *Mora* and you're bound by the

14     statute and the statute requires, I think, that this be

15     addressed in the context of a motion to suppress and not

16     wait till jeopardy attaches.

17                THE COURT:  Where's the authority for that?

18                MR. APFEL:  Um, I have to check.  I have to

19     check.  But I think that -- I think that typically --

20     typically these issues with respect to exclusion of

21     evidence where there is an exclusionary rule,

22     particularly where there's a statutory exclusionary

23     rule, are handled by way of a motion to suppress.

24                THE COURT:  Let's hear from Mr. Yoon.

25          Mr. Yoon, what do you think of the Court's

1    analysis?

2             MR. YOON:  Yes, sir.  The government actually

3    agrees with the Court's analysis and speaking to the

4    risk of the jeopardy attaching, um, frankly the

5    government's willing to take that risk should we proceed

6    in this case.

7             THE COURT:  Well, it's not bargaining, um,

8    you're willing to take it, I'm telling you you're going

9    to have to take it.

10            MR. YOON:  Yes, absolutely, your Honor, and

11   that's something that we're comfortable with and we

12   don't think that's a disadvantage to the government

13   given the way the investigation has gone.

14            THE COURT:  Do you think you've satisfied the

15   controlling cases, as I am reminded, and the statutory

16   language by your brief?

17            MR. YOON:  Your Honor, there was a violation

18   here, absolutely.  Should the tapes have been sealed

19   before five days -- five days and seven days?

20   Absolutely.  They should have been.  This is an

21   infraction of Title III, but not one that is substantive

22   -- it is one that is technical in nature, your Honor,

23   and one that does not trigger the suppression.  That is

24   the government's position.

25            THE COURT:  Well, it doesn't trigger the

1    suppression only because, um, I would be -- we're

2    talking hypothetically here because I haven't ruled,

3    satisfied with the explanation in your brief, right?

4              MR. YOON:  Yes, sir.

5              THE COURT:  Otherwise Mr. Apfel's correct,

6    these tapes go nowhere because there has been a

7    statutory violation.

8              MR. YOON:  Yes, and but, as the Court has

9    expressed and I think Mr. Apfel would agree, that there

10   was no allegation of bad faith here and no invidious --

11             THE COURT:  Well, he doesn't know, he may want

12   to take a shot at at least putting some doubt in the

13   jury's mind at the time of trial or in my mind in which

14   case, um, if it's sufficient, I will exclude them.

15             MR. YOON:  And that would be -- yes, that

16   would be the appropriate setting, where not necessarily

17   here, but at a trial or --

18             THE COURT:  What do you say to his last

19   argument that I must address this pretrial by way of a

20   motion to suppress?

21             MR. YOON:  Your Honor, I don't believe that

22   there is any authority for that.  I believe that this is

23   an authenticity issue, um, that can be addressed during

24   the trial, the purported admissibility of the tapes.

25   The government can and will prove, will endeavor to

1    prove to the Court's satisfaction, before permitting to

2    the jury, that in fact these tapes are exactly what they

3    say, additional evidence -- um, additional methods by

4    which we could do that -- also existing cooperators

5    here.  So, your Honor, we don't believe it's appropriate

6    to address this in this setting, um, and we believe that

7    it is more appropriate to have it in a setting where the

8    trial has progressed.

9              THE COURT:  Well, here's what I'm going to

10   do.  I'm going to deny the motion to suppress without

11   prejudice to the following, without prejudice to further

12   briefing on the issue of whether I must address this

13   pretrial and without prejudice to, um, the burden on the

14   government at trial to prove up the authenticity of the

15   tapes.  The defense need this motion, which I'm denying

16   without prejudice, is sufficient to put the government

17   on notice that there is a challenge to the authenticity

18   of the tapes, especially as the government admits a

19   statutory violation.  And so the government will have

20   the burden at trial to prove up the authenticity of the

21   tapes.

22         Now, before we get to a final pretrial conference

23   here --

24              MR. APFEL:  Your Honor, may I interrupt for a

25   second?

1             THE COURT:  Yes, you may.

2             MR. APFEL:  Before the ruling becomes set in

3     stone.

4         *Mora,* my recollection, and I think this is

5     correct, um, the procedural posture of *Mora*, were that

6     the defendants pled guilty after a motion to suppress on

7     precisely the grounds that had been advanced to the

8     Court would raise and I think in that case rejected by

9     Judge Garrity at the time.

10            THE COURT:  I think that's right.

11            MR. APFEL:  And I think that's right.  And

12    then they preserved -- they entered conditional pleas,

13    conditioned on their right to appeal the issue of

14    whether or not the statute had been violated.

15        So I don't know whether it is -- I can't say for

16    certain, as I'm standing here, that it is a requirement

17    that this issue be addressed pretrial in the context of

18    the motion to suppress -- in the context of the motion

19    to suppress.  I believe, however, that that's what the

20    statute calls for and that's what the practice is.  I

21    believe in almost every case --

22            THE COURT:  No, but that's your point.  I

23    didn't mean to, um, sidestep your point, but my own

24    preparation leads me to believe that the way I propose

25    to ultimately address this is appropriate.  So I'm

1  denying the motion to suppress, and I had two prongs,

2  without prejudice.

3      One, I don't think you have a better argument than

4  the one you've just articulated, but if you do and if I

5  were to become persuaded I had to hold some evidentiary

6  thing or at least, as you've reminded me, go further

7  than Mr. Yoon's brief, then, if I become persuaded I

8  must do that, I will do it.  But as I sit here I am not

9  persuaded, but I'm going to give you the chance, because

10  that hasn't been briefed, the timing issue hasn't been

11  briefed.

12      And the second point is -- and it's without

13  prejudice really to save all the defendants' rights,

14  I've told the government there's an admitted statutory

15  violation, they've got to turn their corners very square

16  as to authenticity at trial, I'll be looking at

17  witnesses, they'll be cross-examination, at that time I

18  will make my preliminary evidentiary findings, rulings,

19  and everyone's rights will be saved if things were to go

20  the government's way.

21          MR. APFEL:  But, your Honor, one last point.

22  The issue here is not simply authenticity, the issue

23  here is not simply the integrity of the tapes, **Mora**

24  makes this clear, **Ojeda Rios** makes it clear.  Even if

25  the government establishes beyond a shadow of a doubt

1     that the tapes, the integrity of the tapes have been

2     maintained, they still must come forward with a

3     satisfactory explanation for the delay.  And if you put

4     it off till trial, I haven't thought through the

5     logistics, but it seems all but inevitable that we'd be

6     in a burden-shifting area --

7               THE COURT:  There's no burden shifting.

8               MR. APFEL:  -- where the government has to

9     prove not just that the integrity has been maintained,

10    they have to go through all the other so-called "***Mora***

11    factors" and establish good faith.  Mr. Yoon said I

12    haven't alleged bad faith.  It's not my burden to allege

13    bad faith.

14              THE COURT:  I understand that.

15              MR. APFEL:  The government has to establish

16    good faith.  You know, he has to establish that the

17    delay was not so long that tampering could have taken

18    place.  And most importantly, for our purposes, he has

19    to establish good reason and a satisfactory explanation,

20    not mere excuses, for the cause for the delay.  If we go

21    forward to trial --

22              THE COURT:  Well, I'm telling you that based

23    upon his brief -- now maybe there's more to it than

24    that, but based upon his brief, as he is an officer of

25    the court, I think that he has provided satisfactory

1    explanations.  I'm content with that.  I'm giving you

2    every right to challenge it at trial and indeed to brief

3    further why that challenge must be entertained prior to

4    trial.

5              MR. APFEL:  Can we go through -- can we go

6    through even one of his so-called "satisfactory

7    explanations" because for every one of the explanations

8    there is specific case authority saying that it's not

9    good enough, it's not an explanation, it's an excuse.

10             You know, his lead argument is that the

11   appointment could not -- quote, on Page 8 of his brief,

12   "could not be scheduled for the same day."  He never

13   tried.  Even with the very partial showing that he's

14   made, if you take the e-mails at face value and you read

15   the e-mails, every one of these e-mails, um -- for the

16   first one, the very first one, the Target Telephone

17   Number 3 terminated on March 15th at 11:59.  Mr. Yoon

18   contacts the District Court clerk by e-mail on that same

19   day, which is a Friday, and does he say, "Is the Court

20   available?  Can we do it now?  Is the Court going to be

21   available tomorrow after this is done?  There's an

22   immediacy requirement here.  There's an urgency

23   requirement."  No.  He says, "Could you let me know when

24   we can schedule next week, can we schedule a time next

25   week?"  And that's what he does in each case.

1    Target Telephones 4 and 5, he contacts the clerk

2    not the day that it goes down, but the next day and he

3    says, "Can we set up a time next week?"  He's contacting

4    the Court in that case on a Friday morning and he says,

5    "Can we do something next week?"  Why not "Can we do

6    something now?  Can we do something this morning?  Can

7    we do something this afternoon?  Can we do something

8    over the weekend?"  Nothing like that.  Weekends count

9    in the statute.  "Immediately" means "immediately."  And

10   *Mora*, the District Court's opinion in *Mora*, makes it

11   clear that weekends do count and have counted for over

12   25 years in this circuit.  It's not a satisfactory

13   explanation.

14       You know, Mr. Yoon says with respect to the last

15   of the, um -- the reupping of Target Telephones 4 and 5,

16   when those are terminated, he says, "Oh, we're very

17   busy."  There was a takedown of 15 different

18   defendants.  There were initial appearances.  There were

19   a lot of logistics.  The government -- that's

20   foreseeable, that's not out of the ordinary, that is the

21   very stuff of a busy AUSA's workload.  That's

22   anticipated, it's not a reason for delay.  You can find

23   somebody else to cover.  You can get a different

24   District Court judge.  The clerk not responding to

25   e-mails is not a satisfactory explanation.

1           He's presenting all sorts of reasons as to why it

2      was inconvenient for him to go to the Court and get

3      these sealed, but he's not giving explanations that

4      count as truly satisfactory explanations within the

5      meaning of the case law.  And that's his burden, and

6      it's not his burden at trial, it's his burden now, and

7      he hasn't met it.

8                THE COURT:  Thank you.  My ruling stands.

9           All right.

10               MR. PARKER:  Your Honor, just so the record's

11     clear, I want to make sure -- I haven't thought about

12     this issue of suppression versus authenticity, but I

13     want to object to that having this resolved prior to

14     trial.

15               THE COURT:  Oh, by joining in the motion, all

16     of who have joined in the motion, have joined, I take

17     it, in Mr. Apfel's arguments, which I have allowed for

18     further briefing on.  But that's my ruling.

19               MR. PARKER:  So if I could just address one

20     practical issue, Judge, with respect to that ruling?

21     You know, if there's a doubt at all as to whether this

22     evidence is going to come in and we're at trial, one or

23     more of us is at trial, um, you know, I would move and I

24     would suspect that I have grounds to exclude mentioning

25     of these tapes in an opening by the government.  And I

1  think if we --

2           THE COURT:  We'll face that at the time of the

3  trial.

4           MR. PARKER:  I think if we have the kind of

5  hearing we're all talking about having, that's not

6  something that's going to take place in the presence of

7  the jury, and so I guess for practical reasons, without

8  any legal authority behind them, I'm wondering why we

9  don't take care of it with all of us here today.

10          THE COURT:  I guess what I don't understand is

11  we have taken care of it, I've denied the motion to

12  suppress on this record.  Your rights are saved.

13      All right.  Now, with respect to Mr. Assencoa, who

14  represents Mr. Assencoa?

15          MR. PARKER:  That's Assencoa, your Honor, and

16  it's James Budreau.

17          THE COURT:  And he's not present.  Well, he's

18  got a motion to suppress that's going to take an

19  evidentiary hearing.

20          MR. YOON:  Yes, Mr. Assencoa and Mr. Ouellette

21  both have motions that they've filed.

22          THE COURT:  And neither counsel is present

23  joining in this?

24          MR. YOON:  I don't see them, your Honor.

25          THE COURT:  All right.  Well, the clerk is

1    going to suggest a date.  You inform them of the date.

2    We'll see if we can't -- and you be ready to prove it

3    up.  Let me talk to the clerk a minute.

4              (Pause.)

5              THE COURT:  How about Wednesday at 9:00 for

6    the government?

7              MR. YOON:  Your Honor, the 19th?  I am

8    scheduled to be out of town.

9              THE COURT:  How about Friday the 21st?

10             MR. YOON:  The 21st?  Thank you, your Honor.

11   That would be great.

12             THE COURT:  At 9:00.  You notify them that if

13   they have a problem with that date, they can be in touch

14   with the Court.  That's when we will handle that.

15        Now, let's move to the final pretrial conference

16   and, um -- so the short of it is, um, I guess in light

17   of what various defense counsel have advanced, I'm going

18   to have to continue the trial.  I propose to continue

19   the trial until the earliest available date in April.

20   The clerk will announce the date.

21             (Pause.)

22             THE COURT:  I propose to put the case to trial

23   on the 7th of April.  Let me go through the concerns

24   that have been articulated that are in the Court's mind

25   -- well, we'll start with the government.

1           The government's all right with the 7th of April?

2                 MR. YOON:  Yes, your Honor.  Thank you.

3                 THE COURT:  And someone had a murder trial.

4     Counsel?

5                 MR. SWOMLEY:  I have a murder trial for the

6     3rd, but I also have a murder trial for April 14th, so

7     --

8                 THE COURT:  I appreciate how busy you are,

9     we're going to start on the 7th, I'll deal with the

10    state judges, um, if we start.

11          Mr. Apfel had a personal matter, but the 7th's

12    okay for you?

13                MR. APFEL:  The 7th should work.  My only

14    concern is I have a trial scheduled with Judge Stearns

15    for the 14th.

16                THE COURT:  But if I get you first, I'll work

17    with Judge Stearns.

18          Mr. Parker, I was not insensitive to what you said

19    at the last time we met, but it seems to me that the 7th

20    ought to alleviate those concerns.

21                MR. PARKER:  I can deal with that, your

22    Honor.  I do have a motion before you for funds, there

23    were two, I got one ruled upon and one not, and the

24    other one is kind of critical.

25                THE COURT:  Yes, without -- I mean I properly

1    treat these things ex parte and I think I can.  The only

2    reason I held that up, Mr. Parker, is -- there's no

3    question about the request, but about the extent, and

4    we're constantly -- we judges are constantly being

5    hectored with limits now on what we can authorize and I

6    have been inquiring within the executives, within the

7    judiciary clerks and others, whether you didn't ask for

8    too much.

9         So I'm certainly going to authorize it, but it may

10   be -- and I will thank you for raising it, I will

11   address it again.  I remember seeing it and saying, "Is

12   this over the amount?" and then the clerk's office steps

13   have been criticized earlier today, we have looked into

14   it and do not have an answer, for which I bear the

15   responsibility.  I'll address it again today.

16                  MR. PARKER:  Thank you.

17                  THE COURT:  All right.  I'm putting it on for

18   the 7th.

19                  MR. APFEL:  And I have an outstanding motion

20   as well, your Honor.

21                  THE COURT:  If you do, I will check the

22   docket, and I thank you.  And if anyone else does, I'll

23   go back over the whole docket.

24        All right.  If we're going on the 7th, then, um --

25   the 7th of April, then by the 17th of March the

1    government is to make a full disclosure of all the

2    materials required by the -- no, one week prior, by the

3    24th of March, the government is to make full disclosure

4    of all the statements and materials that it is required

5    to disclose under the local rules.  The -- by the 31st

6    of March, the government is to set forth the materials

7    required to be set forth one week prior to the trial.

8    By the 2nd of April, the defense is required to make a

9    reciprocal discovery.  But the 4th of April, the, um --

10   motions in limine, stipulations and the like, are to be

11   filed.  The case will empanel on the 7th of April.

12         Are there any other matters we should deal with

13   this morning?

14            (Silence.)

15            THE COURT:  I hear none.

16            MR. YOON:  None from the government, your

17   Honor.

18            (Pause.)

19            THE COURT:  All right.  I hear no other

20   questions.

21            MR. APFEL:  Your Honor, one issue, just on the

22   further briefing, on the timing question?

23            THE COURT:  Uh-huh.

24            MR. APFEL:  I don't think you set a schedule

25   for that.

1    THE COURT:  I didn't so now it's -- here we

2  are in February and now it's off till, um -- this is the

3  14th.

4       How long would you like?

5            MR. APFEL:  I think it's a discrete issue, so

6  a week is fine.

7            THE COURT:  All right, by Friday the 21st.

8  And I invite consideration beyond legal authorities,

9  such as Mr. Parker raised, and we'll see what the

10  government responds.

11       And the government's response a week later by the

12  28th.

13            MR. YOON:  Thank you, your Honor.

14            THE COURT:  And if I need any further

15  hearings, I will schedule it.

16            MR. YOON:  Thank you, your Honor.

17            MR. PARKER:  Your Honor, one question?

18            THE COURT:  Yes.

19            MR. PARKER:  It's been a while since I geared

20  up for trial in this building.  I think that, um --

21       Did you set the 24th as a 21-day disclosure

22  requirement, because that would be the 17th?  I think

23  you were right the first time, if you had in mind the

24  21st day --

25            THE COURT:  Thank you, Mr. Parker.  I should

1    make it the 17th.  The 21-day disclosure works back to

2    the 17th.  The government will understand that.  All

3    right?  And then the government is to make further

4    disclosure one week before and the defense is to make

5    reciprocal disclosure by the Wednesday of the week

6    before.

7         All right.  Thank you all.  We'll recess.

8              (Ends, 10:45 a.m.)

9

10              C E R T I F I C A T E

11

12         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

13    do hereby certify that the foregoing record is a true

14    and accurate transcription of my stenographic notes,

15    before Judge William G. Young, on Friday, February 14,

16    2014, to the best of my skill and ability.

17

18

19    /s/ Richard H. Romanow 03-19-14
      _____
20    RICHARD H. ROMANOW  Date

21

22

23

24

25