UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

No. 1:13-cr-10164-WGY

UNITED STATES OF AMERICA

vs.

MICHAEL BOURQUE, et al

*********

For Hearing Before:
Judge William G. Young

***EXCERPT TRANSCRIPT***
Five Plea Change Hearings
Kinney, Goolst, Akasa, Chisholm, and Roy

United States District Court
District of Massachusetts (Boston)
One Courthouse Way
Boston, Massachusetts 02210
Monday, April 14, 2014

********

REPORTER: RICHARD H. ROMANOW, RPR
Official Court Reporter
United States District Court
One Courthouse Way, Room 5510, Boston, MA 02210
bulldog@richromanow.com

A P P E A R A N C E S

MICHAEL I. YOON, ESQ.
United States Attorney's Office
J. Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3180
Email: michael.yoon2@usdoj.gov
For the United States

JOHN F. PALMER, ESQ.
Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
Boston, Massachusetts 02109
Email: Jpalmer@socialaw.com
For Brian Chisholm

DEREGE B. DEMISSIE, ESQ.
Demissie & Church
929 Mass. Ave., Suite 01
Cambridge, Massachusetts 02139
Email: Dd@demissiechurch.com
For Phillip Goolst

LESLIE FELDMAN-RUMPLER, ESQ.
101 Tremont Street, Suite 708
Boston, Massachusetts 02108
Email: Lfedlmanr@aol.com
For Michael Roy

EDWARD J. McCORMICK, ESQ.
McCormick & Maitland
195 Main Street, Suite Six - Hayward Manor
Franklin, Massachusetts 02038
Email: Ejmccormick3@verizon.net
For John Kinney

KEVIN L. BARRON, ESQ.
Rudolph Friedmann, LLC
15 Broad Street, Suite 240
Boston, Massachusetts 02109-3804
Email: Kevinbarronesq@gmail.com
For David Akasa

P R O C E E D I N G S

(***EXCERPT*** begins.)

(Begins, 9:15 a.m.)

THE CLERK: Criminal Action 13-10164, the United States of America versus Bourque, et al.

THE COURT: I'm going to proceed this way. I'm informed that various of the individuals at the bar desire to tender pleas of guilty. So let's just get the folks in, and the Clerk has set it up for me, who are sitting in the jury box, to identify themselves. I'm going to be talking to you individually.

But, Mr. Kinney?

MR. KINNEY: Yes, your Honor.

THE COURT: Thank you.

Mr. Goolst?

MR. GOOLST: (Nods.)

THE COURT: Yes.

Mr. Akasa?

MR. AKASA: (Raises hand.)

THE COURT: Thank you.

And, Mr. Roy?

MR. ROY: (Raises hand.)

THE COURT: All right. And, counsel, you should feel free to come stand by your clients. They're in custody, so naturally I've got marshals here, but you

get so you can consult with your clients. And I'll stand here so that I can speak to them all directly.

Well, actually, that's not going to work, I've got to look at them, because we're going to talk, we're really going to talk together. And while I can do this and I can do it fairly in a group, each one of you is entitled to be treated individually. Each one of you is in charge, really in charge of whether you're going to go through with this and plead guilty or not. So let me start this way.

My name is Bill Young. I'm the judge who is responsible for presiding in this session of the court. I hear, through the lawyers, who told the Clerk, that each one of you wants to plead guilty to the charge that has been made against you individually. Before I can let you plead guilty, I have to find out certain things.

I have to find out that you, each one of you, knows what you're doing. I have to find out that you know what you're giving up, because you give up things that are terribly important to you. I have to find out that you know what you're letting yourself into, what can happen to you if you plead guilty. I have to find out that you want to plead guilty, not that you're happy about it, but that you, individually, each one of you --

not the lawyers, not your family, nobody else, you've decided that the best thing for you to do is plead guilty. And then I have to find out that the government has enough evidence against each one of you that if we go to trial on this case, you could be found guilty of the charge against you.

To find these things out, I ask you questions. If you don't understand something I'm asking you, stop me. I have to explain it so that you understand it. And while I need to look you in the eye and we need to talk, your lawyers have come up as close as we can manage so that you can talk to them and you can stop this at any time and say, "I want to talk to my lawyer." Just gesture, I'll stop and we'll wait. I'm not in a hurry here.

Lastly it's entirely up to you whether you go through with pleading guilty today or not. If you decide you don't want to plead guilty, I'm not going to be angry. I'm all set to go to trial, my job is to give fair and impartial trials, and I'm ready to give you, each one of you, such a trial.

I want to be very clear with you that I would never ever punish you or any of the co-defendants for going to trial. Having a trial is one of your constitutional rights. Now, real world, usually there's

a discount for people who plead guilty. The reason? The government doesn't have to spend the tax money to have a trial. Usually I give the discount. I'm not bargaining with you, you're entitled to know how I work. Unless I find out you've committed some other crime or you lied to me or something like that, usually I give the discount. So if you decide you want a trial, fine, no discount, but I'll never punish you, not one day, for going to trial.

Now, let's go, I'm going to do the, "Do you know what you're doing?" piece of it first.

But before I ask the questions, you should be sworn and the Clerk will swear you.

(ALL DEFENDANTS, sworn.)

THE COURT: And we'll start in the order that I called your name.

And, Mr. Kinney, would you state your full name.

MR. KINNEY: John Patrick Kinney.

THE COURT: And, Mr. Kinney, do you understand the things I've just explained?

MR. KINNEY: Yes, your Honor.

THE COURT: How old are you, Mr. Kinney?

MR. KINNEY: 34.

THE COURT: How far did you go in school?

MR. KINNEY: I got my GED.

THE COURT: Are you taking any medication today?

MR. KINNEY: No.

THE COURT: Under the influence of alcohol?

MR. KINNEY: No.

THE COURT: Under the influence of any drug?

MR. KINNEY: No.

THE COURT: Know what you're charged with?

MR. KINNEY: Yes.

THE COURT: Tell me.

MR. KINNEY: Conspiracy with intent to distribute oxycodone.

THE COURT: We'll stop there, for the moment.

Mr. Goolst, will you state your full name.

MR. GOOLST: Philip Goolst.

THE COURT: And did you understand the things that I've just explained?

MR. GOOLST: Yes.

THE COURT: How old are you, sir?

MR. GOOLST: 44.

(Interruption by Court Reporter.)

THE COURT: How far did you go in school?

MR. GOOLST: High school.

THE COURT: One thing I skipped with Mr. Kinney and I'm going to go back.

Have you ever been treated for a mental condition of any sort? And I'll stick with you, Mr. Goolst.

MR. GOOLST: No.

THE COURT: Are you taking any medication today?

MR. GOOLST: No.

THE COURT: Are you under the influence of alcohol?

MR. GOOLST: No.

THE COURT: Under the influence of any drug?

MR. GOOLST: No.

THE COURT: Do you know what you're charged with?

MR. GOOLST: Yes.

THE COURT: Tell me.

MR. GOOLST: Conspiracy to deliver oxycontin.

THE COURT REPORTER: I'm sorry, Judge, I didn't hear that.

THE COURT: Conspiracy to deliver oxycontin, he said.

And back to you, Mr. Kinney, because I didn't ask about your mental state.

Have you ever been treated for any mental condition of any sort?

MR. KINNEY: No, your Honor.

THE COURT: Are you aware of any mental condition you may have?

MR. KINNEY: No.

THE COURT: All right. Now we'll got to Mr. Akasa.

Would you state your full name, sir.

MR. AKASA: David Akasa.

THE COURT: And, Mr. Akasa, do you understand the things that I have just explained here?

MR. AKASA: Yes.

THE COURT: How old are you?

MR. AKASA: 25.

THE COURT: How far did you go in school?

MR. AKASA: College.

THE COURT: A graduate?

MR. AKASA: I was a senior.

THE COURT: All right. Have you ever been treated for a mental condition of any sort?

MR. AKASA: No.

THE COURT: Are you aware of any mental condition you may have? You have to answer. You said "No"?

MR. AKASA: No.

THE COURT: All right. Are you taking any medication today?

MR. AKASA: Yes.

THE COURT: Tell me, if you don't mind.

MR. AKASA: Insulin.

THE COURT: What's that for?

MR. AKASA: Diabetes.

THE COURT: Are you taking it as prescribed?

MR. AKASA: Yes.

THE COURT: How do you feel today?

MR. AKASA: Good.

THE COURT: My concern is you feel normal and able to make decisions on your own, is that right?

MR. AKASA: Yes.

THE COURT: And so you know that I'm the judge and I'm neutral, you know that the government is the prosecutor, they're the ones who are pressing the charge, and you have a lawyer who is representing you, and you understand those roles?

MR. AKASA: Yes.

THE COURT: Do you think you can make your own decisions today?

MR. AKASA: Yes, sir.

THE COURT: Are you under the influence of alcohol?

MR. AKASA: No.

THE COURT: Are you under the influence of any

drug?

MR. AKASA: No.

THE COURT: Do you know what you're charged with?

MR. AKASA: Conspiracy with intent to possess and distribute oxycodone.

THE COURT: All right.

And, Mr. Chisholm, would you state your full name.

MR. CHISHOLM: Brian Chisholm.

THE COURT: How old are you, Mr. Chisolm?

MR. CHISOLM: 45.

THE COURT: How far did you go in school?

MR. CHISHOLM: I graduated high school, attended college.

THE COURT: How far did you get in college?

MR. CHISOLM: A little short of an associate's degree.

THE COURT: Have you ever been treated for a mental condition of any sort?

MR. CHISOLM: No.

THE COURT: Are you aware of any mental condition you may have?

MR. CHISHOLM: No.

THE COURT: Are you taking any medication?

MR. CHISHOLM: No.

THE COURT: Under the influence of alcohol?

MR. CHISHOLM: No.

THE COURT: Under the influence of any drug?

MR. CHISHOLM: No.

THE COURT: Do you know what you're charged with?

MR. CHISOLM: Yes.

THE COURT: Tell me.

MR. CHISOLM: Conspiracy to possess and distribute oxycodone.

THE COURT: And, Mr. Roy, would you please state your full name.

MR. ROY: Francis Roy.

THE COURT: And how old are you, sir?

MR. ROY: 33.

THE COURT: And how far did you go in school?

MR. ROY: I graduated high school.

THE COURT: Have you ever been treated for a mental condition, sir?

MR. ROY: No, sir.

THE COURT: Are you aware of any mental illness or condition you may have?

MR. ROY: No.

THE COURT: Are you taking any medication today?

MR. ROY: No.

THE COURT: Under the influence of any drug?

MR. ROY: No, sir.

THE COURT: Under the influence of alcohol?

MR. ROY: No.

THE COURT: Do you know what you're charged with?

MR. ROY: Yes.

THE COURT: Tell me.

MR. ROY: Conspiracy to distribute oxycodone.

THE COURT: Do you understand the matters that I explained when I first starting talking to you this morning?

MR. ROY: Yes.

THE COURT: And I'll skip back to you, Mr. Chisholm.

Do you understand the matters I explained to you earlier?

MR. CHISOLM: Yes.

THE COURT: And, Mr. Akasa, do you understand the matters I explained to you earlier?

MR. AKASA: Yes.

THE COURT: All right.

Now, talking to you all, I want to explain to you your rights, perhaps not all of them, but your

significant rights.

The government has made this charge, it's a charge of conspiracy, but each one of you now starts innocent and the government has to prove as to each one of you individually that you are guilty of conspiracy. You're entitled to an individual verdict even though we'll try the case as to a group. The verdict will be individual.

Now, here's what they've got to prove and they've got to prove it, the government, beyond a reasonable doubt. They have to prove that each one of you joined in a conspiracy to do something that the law prohibits. And this joinder in the conspiracy -- and it's not good enough that maybe you hung around with the wrong people, it's not proof of conspiracy that other people were engaged in a conspiracy to possess oxycodone with intent to distribute or do other acts that violate the law, even if you knew about it. "Conspiracy" means you and one of the other people that they have charged, or more than one, engaged in an actual deal to violate the law, an actual agreement.

Now, the deal has got to be with another co-conspirator, another person who, like you, is prepared, is planning, is agreeing to violate the law. Undercover police officers, informants, they don't

count, they're not co-conspirators because they're not really, truly -- whatever they may say, they're not truly in on the deal.

So conspiracy is that criminal agreement to violate the law. It doesn't have to be in writing. It doesn't have to be a handshake. It doesn't have to be a wink or a nod. But it's got to be genuine. They've got to prove that you got in on or formed, were part of, agreed, with this conspiracy to violate the law. That's one thing.

The second thing they've got to prove is that what the specific goal, the specific intent of the conspirators is, and in this case the specific intent is, the goal of the conspiracy has got to be, um, not, for example, receiving stolen refrigerators and distributing them -- it isn't just a conspiracy to violate the law in some respects, it's a specific conspiracy, and here the specific conspiracy that they've charged and they've got to prove is to possess with intent to distribute oxycodone.

What does that mean? "Possess" means what you would think it would mean, it's the common understanding of "possess." You "possess" something when you have it. I've got my keys in my pocket. I possess them. I'm carrying them around. But it also means having the

power to exercise control over them. I have a briefcase in my office here in the building. Now I'm here in the courtroom, the briefcase is there, but I put the briefcase there and I can go take it when I want it. I possess it.

So, first of all, the goal has to be to possess of the conspiracy. Here it's to possess oxycodone, a specific substance, a substance that the law forbids the people from possessing, unless available through the medical business and the like. But the law generally forbids us all from possessing oxycodone.

That's not enough. It's to possess this oxycodone with the idea not of using it, not of taking it, but of distributing it. And distributing it, in terms of the law, means passing it on to other people. Now, usually that means selling it and making some money from the sale of it. But the charge here is conspiracy, it's an agreement to violate the law and the specific conspiracy is to possess oxycodone with the intent to distribute it. And that's the charge.

The government doesn't have to prove that any of you actually did it, but they have to prove that you were in on a deal to do it.

In this session of the court, as I read the Constitution, one of the things that may bear upon what

sentence I will impose upon you, if you plead guilty or are found guilty, is how much oxycodone is reasonably attributable to each one of you. That doesn't mean how much oxycodone you actually distribute, actually did, it means how much reasonably you knew this group, these conspirators, were dealing with, whether you did it or not. I'll make them prove it to a jury beyond a reasonable doubt.

Now, there may be some other things, which one was the leader or something else. Anything that would make your sentence higher, any of the things I'm supposed to look at to decide what sentence -- not the stuff that helps you, a discount because you pleaded guilty, or anything else about you personally, that they don't have to prove, but I'll consider it at the appropriate time. But anything that would make your sentence higher, I'll make them prove it to a jury beyond a reasonable doubt if we go to trial.

I keep talking about proving and trials. If we go to trial here, a jury will decide these things, not me. The jury, you'll have some say through your attorneys who sits on that jury. So the government has some say, too, but you have some say. The jury of average people, they'll be the ones who decide.

At the trial you have the right to confront the

witnesses against you. Now that means the witnesses, they'll testify right there from that witness stand, you'll be right here in the courtroom, you can watch them, but much more important than that, just watching them, your lawyers can ask them questions, can cross-examine them, your lawyers can make arguments on your behalf, your lawyers can suggest that as to the two elements I say the government has to prove, there is a reasonable doubt. And if there's a reasonable doubt, you cannot be found guilty. The lawyers can argue that.

You can call witnesses on your own behalf. You can testify on your own behalf, but you don't have to. In fact you don't have to do anything. The government made these charges -- or the charge, it's a single charge, and the government has got to prove this charge beyond a reasonable doubt. You don't have to do anything. You can sit there at counsel table and see what the government proves. And to the extent you're silent, I say to the jury, you're innocent. That's the word I use. You are innocent people. And the government made the charge, the government's got to prove the charge beyond a reasonable doubt.

Now, you can push back in all the ways that I said, but you don't have to, you don't have to do anything, and they cannot, the jury cannot hold it

against you.

Now that applies to me, too, seriously insofar as my mind can do it. Yes I come in here, I'm told certain people are going to plead, you people are in custody, that's to make sure you show up for the trial, but to me you're all innocent because I don't know what the evidence is going to be in this case and my job is to give a fair and impartial trial. So I'm not thinking, "Well, this one is probably guilty and maybe there's some question about that one," to me you're innocent. And when I explain these things, I'm not giving you anything. These are your rights, you have every one of these rights.

Now, if you plead guilty, you're giving them all away. Here's what's going to happen. When I'm done making sure you're acting voluntarily, I'll say to Mr. Yoon, "So as to these five folks, what have you got, tell me briefly what evidence you have?" And then I'll say, "Well, is that true? Do you understand that?" That's as close to a trial as you ever get. There's never a jury. You don't have the right to cross-examine or confront the witnesses against you. You still have the right to be silent.

Now, that's true. Until I sentence you, you don't have to say anything about what your involvement is.

Once you're sentenced though, then the government has every right to find out what you did as to this charge, what you did as to this charge, once you're sentenced. In other words, your right to be silent is gone.

Now, for the ones who want to go to trial, I plan to start the trial today. But who knows? Suppose I continued that trial and then, as time passes, I sentence you, that means you can be called to testify against the other people they've charged and you have, if you're sentenced, you have nothing to say about it.

Likewise if you plead guilty here this morning and you go from truly being innocent, as far as I'm concerned, to being guilty, you're guilty and all that remains is for me to figure out what the sentence is, not today, but once I've got a presentence report. There's no taking back the plea if you plead, then you're guilty, and all I have to do is sentence you.

Now, Mr. Kinney, do you understand all those things I just explained?

MR. KINNEY: Yes, your Honor.

THE COURT: And, Mr. Goolst, do you understand those things?

MR. GOOLST: Yes, your Honor.

THE COURT: Mr. Akasa, do you understand those things?

MR. AKASA: Yes.

THE COURT: Mr Chisholm, do you understand those things?

MR. CHISHOLM: Yes, your Honor.

THE COURT: And, Mr. Roy, do you understand those things?

MR. ROY: Yes, your Honor.

THE COURT: Now let's talk about what may happen to you. And because sentencing is complex, I need to talk to the government's lawyer here and it may be different for different ones of you for different reasons. So I turn now to the -- and I'll go person by person and we'll figure it out, some of you are pleading without a plea agreement, some of you have plea agreements and we'll take that individually. But the reason I talk to him now is just what he thinks he can prove. He's the one whose job it is to see if he can't come up with a sentence that the government wants.

So while you're still innocent, you need to listen to what he says could happen to you. Now that doesn't mean that that's what I will do, I'm neutral, I'm the judge, but ultimately I will sentence, and I need to know from him what, as I would constitute it, what's the highest thing, what's the heaviest sentence I could impose upon you. And that is I don't -- let's say I

don't give you any discount and I go as high as the sentencing guidelines will go, which is as high as I think the Constitution will allow me to go, and then I want him to tell me what the sentencing guidelines recommend.

Now that doesn't mean -- and if there's any mandatory minimum, I want to know that. I want to know it because I want you to know it while you're still innocent. And then if you have a plea agreement, I want to go over the plea agreement so that you really know what could happen to you here. So now we're going to go person by person and talk it through.

So we'll start with Mr. Kinney with respect to -- I want to know what enhancements and where they lead, talk of the guideline, and then I want to know with it the discount for the plea, what's the range.

MR. YOON: Yes, your Honor.

For Mr. Kinney, given that the defendant, um, was responsible for 498 to 1,990 oxycodone 30-milligram pills, which translates into 14.92 grams and 59.70 grams of oxycodone, the equivalence of between 100 and 400 kilograms of marijuana, leads to a base offense level of 26 at the criminal history 2.

And so, your Honor, just simply that, um, it is 70 to 87 months, that is without a plea. Should there be a

plea of guilty, the guideline range would be 51 months to 63 months.

THE COURT: And no minimum mandatory?

MR. YOON: Correct, your Honor.

THE COURT: All right.

Mr. Kinney, now, you and I need to talk. So what he tells me is if you plead guilty here, I could send you to prison for 87 months. And I'm going to use all these figures because -- I'm not saying it would be higher than 87, but you understand it could be up to 87 months. Are you clear on that?

MR. KINNEY: Yes, your Honor.

THE COURT: Now, under these guidelines, they're advisory, I don't have to follow them. I can go higher. I can go lower. And at the sentencing I'm going to listen to your attorney as well. But the guidelines are just that, they're guidelines, and I take them seriously. And they say, for the government, that I should sentence you to prison for 51 to 63 months. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, in your case you have a plea agreement. Let's take a look at it, make sure that is your plea agreement.

MR. KINNEY: Yes, it is.

THE COURT: And have you read that?

MR. KINNEY: Yes, sir.

THE COURT: And have you talked it all over with your attorney?

MR. KINNEY: Yes, I have.

THE COURT: Do you think you understand it?

MR. KINNEY: Yes.

THE COURT: So let's see what it says.

With a plea agreement, it's like a contract between you and the government. If you do what you're supposed to do under the plea agreement, I will make them do what they're supposed to do under the plea agreement. But you understand I'm not bargaining with you, I just want you to understand.

Do you understand that?

MR. KINNEY: Yes, your Honor.

THE COURT: So here's what they say they are going to recommend. (Pause.) They say they are going recommend the discount and the low end of the guidelines, is that how you understand it?

MR. KINNEY: Yes, your Honor.

THE COURT: So it sounds like they're going to be recommending that you go prison for 51 months. Do you understand that?

MR. KINNEY: Yes, your Honor.

THE COURT: Okay. They put in all these plea agreements that if I sentence you in accordance with what this deal is here, that you can't appeal, you can't challenge it after I sentence you, and that's the law to put this in here. But when I come to sentence you, if you plead guilty or are found guilty, I'm going to tell you that you have a right to appeal and you do. The problem is that the only way you do, if you go through with this, with this plea agreement, is if there is something called "manifest injustice," because they're going to run right into me or some judge in a higher court and say, "Look, he pleaded guilty and he waived his rights to appeal and the like." Now, a judge could find manifest injustice, but I'll tell you, since I started seeing this in plea agreements, I've never seen a case where that happened. So in effect you've lost your right to appeal.

Do you understand that?

MR. KINNEY: Yes, your Honor.

THE COURT: Now, other than this deal, that's what your plea agreement is, has there been any promise made to you, any promise at all to get you plead guilty?

MR. KINNEY: No, your Honor.

THE COURT: No one said, "You know, plead

guilty before Young because we know he'll do this or that"?

MR. KINNEY: No, your Honor.

THE COURT: Did anyone threaten you with anything to get you to plead guilty?

MR. KINNEY: No.

THE COURT: This is a conspiracy case. Are you covering up for someone else by pleading guilty yourself?

MR. KINNEY: No.

THE COURT: Do you know that if you're pleading guilty to this charge, um, if you are not a citizen, you have the risk of being deported from the United States, denied admission under the laws of the United States, denied naturalization under the laws of the United States?

MR. KINNEY: Yes, I understand that.

THE COURT: Have you had enough time to talk all of this over with Mr. McCormick, your attorney?

MR. KINNEY: Yes, I have.

THE COURT: Has he been a good attorney for you, gotten for you those things which are your rights under the law?

MR. KINNEY: Yes, he has.

THE COURT: Are you satisfied with his

representation of you?

MR. KINNEY: Yes.

THE COURT: You still want to plead guilty?

MR. KINNEY: Yes, your Honor.

THE COURT: Why?

MR. KINNEY: Because I am guilty.

THE COURT: All right.

Now Mr. Goolst. In your case you don't have a plea agreement, so we'll see where we are here. And I'm going to ask the same question of Mr. Yoon. It's perfectly fine to plea without an agreement, but we don't know what he's going to recommend, so I'll ask him.

And you haven't got a deal. You haven't waived your rights to appeal what I do. It's what is called a "straight-up plea," you're going to plea, but you don't have a deal with the government. That's lawful, but I want you to understand it.

Do you understand it, Mr. Goolst?

MR. GOOLST: Yes.

THE COURT: Now, Mr. Yoon, he's still required to follow the law and I need to know how his calculations go even though at the time of sentencing I'll listen to your lawyer and I'll listen to you. So the same calculations as to Mr. Goolst.

MR. YOON: Your Honor, I did want to make clear for all of the defendants, um, before I proceeded, that the sentencing guideline ranges that I am advising the Court of are calculated, um, without the two-point suggested reduction by the sentencing commission amendment of April 10th, 2014. So the sentencing recommendation of the government will actually be ultimately at sentencing will be two levels below the sentencing guideline range.

THE COURT: Well, that's helpful. So what you're saying is you're going to go ahead, since I have discretion anyway, you're going to adopt what the sentencing commission has advised, so your range is going to be two levels lower.

MR. YOON: Yes, your Honor.

THE COURT: Then, though it makes it more complex, we'll need to know, everyone needs to know. So go back to Mr. Kinney.

MR. YOON: Yes, your Honor.

THE COURT: So as to Mr. Kinney, what is the range you're going to be advising me of?

MR. YOON: Yes, for Mr. Kinney the ultimate range that the government will advise will be a 41-to-51-month range, your Honor, so the low end of the guidelines will be 41 months.

THE COURT: All right. The sentencing commission is changing their policy really and I respect that, though I'm not bound by it, and so though now it reads 51 to 63 months, they've just amended it and since they've amended it, the government is going to adopt that. So he tells me what he really will recommend is 41 to 51 months.

Do you understand that?

MR. KINNEY: Yes, your Honor.

THE COURT: Now, understand I don't have to go along with any of that, I can go up to 87 months. We're clear on that?

MR. KINNEY: Yes.

THE COURT: Now that he's explained that, let's get these various figures, Mr. Yoon, for Mr. Goolst.

MR. YOON: Yes, your Honor. Thank you.

For Mr. Goolst, the range of oxycodone attributable to Mr. Goolst is between 498 and 1,990 oxycodone 30-milligram pills, translating into 14.92 grams and 59.70 grams of oxycodone. Your Honor, the equivalency there is between 100 and 400 kilograms of marijuana. Your Honor, the base offense level would be 24. The government does believe that Mr. Goolst, as a runner for Mr. Bourque, was a minor participant under

3(b)(1.2)(b). So, your Honor --

THE COURT: Now, don't -- I appreciate you're saying that, but to get the maximum --

MR. YOON: Yes, sir.

THE COURT: -- don't figure that in.

MR. YOON: Yes, sir.

THE COURT: But you can figure it in as to the other calculations you give me, and here's why. Not because I wouldn't go along with that, but you've got to know the worst that can happen to you. So assume that I don't go along with that, that's the figure I want from him, from the maximum that you could get hit with, and then, since that's the government's view, we'll see what they say as to the other.

You understand now, I don't have to go along with this, I just want you to know what, as a practical matter, you're really looking at. Right? You understand this?

MR. GOOLST: Yes.

THE COURT: Very well.

All right. Without that, for the maximum, but then include it for the various ranges you're going to give me.

MR. YOON: Yes, your Honor. That range will be 78 months to 97 months, um, with, your Honor, a -- a

reduction, your Honor, then the potential range, if the defendant is considered to be a minor participant, would, in fact, be 63 to 78 months, your Honor. Your Honor, with acceptance, it would be 46 to 57 months. And, your Honor, the government will be recommending a range of 37 to 46 months. And so the low end of the guidelines, 37 months.

THE COURT: Tell me what the range is before this amendment?

MR. YOON: Oh, I apologize, your Honor, I appear to have misstated. If I could start over. Mr. Demissie has pointed that out --

(Pause.)

THE COURT: These things are complex, but they're very serious to all of you, because these numbers mean something. It's all very well for me to say I don't have to follow them, but they come from the sentencing commission and I pay attention to them. So we need to hear the right numbers now while you're still innocent.

MR. YOON: Yes, your Honor. Actually the final range, your Honor, the government will be recommending, is going to be 37 to 46 months, the low end being 37.

THE COURT: Understand. But without the

recent amendment, what's the range, as it stands now?

MR. YOON: Yes, your Honor. As it stands now, 46 to 57 months, your Honor.

THE COURT: Thank you. Okay.

Now, even with all of this data, I could send you to prison for 97 months. Do you understand that?

MR. GOOLST: Yes, your Honor.

THE COURT: The sentencing guidelines, as they stand now, say that I should send you to prison for 46 to 57 months, but with this amendment, which the government's going to go along with, that will take us to 37 to 46 months, and in your case, even without a plea, they're telling me that they will recommend 37 months. So if you plead guilty, you can hold them to that.

Do you understand those things?

MR. GOOLST: I do.

THE COURT: All right.

Now, other than the promise, because that's what it is, that Mr. Yoon just made to you, other than that promise, has anyone promised you anything to get you to plead guilty?

MR. GOOLST: No, your Honor.

THE COURT: Are you -- you know, nothing about me, you know, "We know Young, Young will do this or

That," anyone say anything like that?

MR. GOOLST: No.

THE COURT: Anyone threaten you with anything to get you to plead guilty?

MR. GOOLST: No, your Honor.

THE COURT: Are you covering up for someone else?

MR. GOOLST: No, your Honor.

THE COURT: Do you know if you're guilty of this crime and not a citizen, you can be deported, denied admission under the laws of the United States and denied naturalization under the laws of the United States. Do you know that?

MR. GOOLST: Yes.

THE COURT: Are you satisfied with Mr. Demissie as your attorney?

MR. GOOLST: Yes.

THE COURT: Has he been a good attorney for you, gotten for you those things that are your rights?

MR. GOOLST: Yes.

THE COURT: Do you still want to plead guilty?

MR. GOOLST: Yes.

THE COURT: Why?

MR. GOOLST: Because I did it, your Honor.

THE COURT: All right.

Now, Mr. Akasa, you have a plea agreement and let's have a look at that first.

Do you understand the plea agreement is your deal with the government?

MR. AKASA: Yes.

THE COURT: I show you that page. Is that your signature?

MR. AKASA: Yes.

THE COURT: And is that your plea agreement?

MR. AKASA: Yes, it is.

THE COURT: And have you talked this all over with Mr. Barron?

MR. AKASA: Yes.

THE COURT: Do you think you understand it?

MR. AKASA: Yes, sir.

THE COURT: You know that that's your bargain with the government. I want you to be clear on that. And as to you I want the same information from Mr. Yoon. He's going to tell me the most, as I understand the Constitution, the highest sentence under the Constitution I could impose upon you, then he can take into account other reasons for going down and giving you these ranges, the range as it stands now and the amended range that they'll go along with.

But while we're still talking about the plea agreement, I assume in here there's the same waiver language about appealing. They can do that, but I will tell you that if I sentence you, that you have a right to appeal and you do have a right to appeal, but if my sentence falls within what's contemplated by this plea agreement, it's really futile because if you try, they'll say, "Wait a second, he agreed not to," and unless there's manifest injustice, which I at least have never seen, then you're stuck with the sentence I give you.

Do you understand that?

MR. AKASA: Yes, I do.

THE COURT: All right. Let's have the same data from Mr. Yoon.

MR. YOON: Yes, your Honor.

For Mr. Akasa, your Honor, Mr. Akasa is accountable for 1200 oxycodone, 30 milligram pills, that translates to between 14.92 grams and 59.70 grams of oxycodone, equivalency to 100 to 400 kilograms of marijuana. And the base offense level is 26. So the highest guideline range at base level of 26 would be 63 to 78 months.

THE COURT: So 78 is the top?

MR. YOON: Yes, your Honor.

THE COURT: All right. And now the range with the appropriate discount.

MR. YOON: Yes, your Honor. With acceptance the range would be 46 to 57 months with a maximum of 57 months. And the government's recommendation would take into account the amendment and that range would fall to 37 for 46 months, the 46 months being the maximum of that range.

THE COURT: And your recommendation would be 37?

MR. YOON: Correct, your Honor.

THE COURT: So following the same procedure, if you plead guilty here, I can sentence you up to 78 months in prison.

Do you understand that?

MR. AKASA: Yes.

THE COURT: And the range that at least I'm advised as things stand today is a sentence of 46 to 57 months.

Do you understand that?

MR. AKASA: Yes, I do.

THE COURT: But because the government is going to go along with this amendment, that brings it down to 37 to 46 months and they're going to recommend 37 months.

Do you understand that?

MR. AKASA: Yes.

THE COURT: Have you had enough time to talk all of this over with Mr. Barron?

MR. AKASA: Yes.

THE COURT: Has he been a good attorney for you?

MR. AKASA: Yes.

THE COURT: Gotten for you those things that are your rights under the law?

MR. AKASA: Yes, your Honor.

THE COURT: Are you satisfied with his representation of you?

MR. AKASA: Yes.

THE COURT: Do you still want to plead guilty?

MR. AKASA: Yes, I do.

THE COURT: Why?

MR. AKASA: Because I'm guilty.

THE COURT: Okay.

Now, Mr. Chisholm, you don't have a plea agreement but you can still plead straight up, that means that they haven't yet made a promise to you, but we'll see if they'll willing to make a promise to you today. But as far as I know, there's no deal, is that correct?

MR. CHISHOLM: That's correct.

THE COURT: All right. So even without a deal I am interested -- I can't go higher than some number, under the Constitution, and I will be advised on another range or ranges and I certainly will take that into account, though I'm not bargaining with you.

Do you understand those things?

MR. CHISHOLM: Yes, sir.

THE COURT: All right. Mr. Yoon, would you give me the same information for Mr. Chisholm.

MR. YOON: Yes, your Honor. Thank you.

The range of oxycodone here would be between 498 and 1990 oxycodone, 30 milligram pills, between 14.92 grams and 59.70 grams of oxycodone, an equivalency to between 100 and 400 kilograms of marijuana.

Your Honor, the defendant's base offense level is 29 as the defendant does fall into, um, under 4(b)(1.1), the career offender sentencing guideline, as he was 18 years of age at the time of this offense. The instant offense, this offense, he's potentially pleading guilty to is a felony of a controlled substance offense and the defendant has two prior felony convictions for controlled substance offenses.

That being the case, your Honor, the highest range would be 151 to 188 months. So the top of the range is

188. Your Honor, with acceptance the range would fall to 120 to 150 months. So 150 would be the top of the range.

In this case, your Honor, given the recent amendment, the range would be 100 to -- 100 months to 125 months. In this case, your Honor, while there is no agreement, the government has spoken to counsel, and while it is not a plea agreement or a promise having been made, the government does believe it will recommend a sentence for Mr. Chisholm in the range of 78 months to 92 months.

THE COURT: Well, having mentioned that, if he pleads guilty now, he can hold you to that. So that's the province, 78 to 92, from you.

MR. YOON: Yes, your Honor.

THE COURT: All right. Just so long as we understand.

So in your case, given your prior record, and you don't get an separate trial on that, the documents are there and we're not having a jury trial on what your prior record is, so you are what's called -- if you plead guilty to this, you're what's called a "career offender" and I can put you in prison for 188 months.

Do you understand that?

MR. CHISHOLM: Yes, your Honor.

THE COURT: Now, with, under these guidelines -- now I can go a little lower than these guidelines, but I can go up to 188 months. With the guidelines, it's 120 to 150 months. With the amendment, it's 100 to 125 months.

Do you understand that?

MR. CHISHOLM: Yes.

THE COURT: So that's what I'm going to be told, that even with the amendment, the sentence that the sentencing commission recommends for you is 100 to 125 months. Now, they are, right here, with the Court Reporter taking it down, they're promising to recommend not less than 78 months nor more than 92 months.

Is that how you understand it?

MR. CHISHOLM: Yes.

THE COURT: Okay. You understand that I don't have to go along with any of that, I can go higher than that all the way up to 188 months. Do you understand that?

MR. CHISHOLM: Yes.

THE COURT: Now, in your case, other than the promise he just made to you, is there any promise, any deal, any side consideration that I don't know about?

MR. CHISHOLM: No.

THE COURT: Anyone threaten you with anything

to get you to plead guilty?

MR. CHISHOLM: No.

THE COURT: Are you covering up for someone else by pleading guilty yourself?

MR. CHISHOLM: No.

THE COURT: You know that if you're convicted of this crime and you plead guilty of it and you're not a citizen, then you may be deported if you're not a natural citizen under the laws of the United States and you may be denied admission under the laws of the United States.

MR. CHISHOLM: Yes, your Honor.

THE COURT: Have you had enough time to talk this all over with your attorney?

MR. CHISHOLM: Yes.

THE COURT: Has he been a good attorney for you?

MR. CHISHOLM: Yes.

THE COURT: Has he gotten to you those things that are your rights under the law?

MR. CHISHOLM: Yes.

THE COURT: Are you satisfied with his representation?

MR. CHISHOLM: Yes.

THE COURT: Do you still want to plead

guilty?

MR. CHISHOLM: Yes.

THE COURT: Why?

MR. CHISHOLM: Because I'm guilty.

THE COURT: Okay.

Mr. Roy, in your case there is a plea agreement. Let's start there. Okay. I've given you a signed copy of it, so you take a look at that document.

Is that your signature on the copy of it?

MR. ROY: Yes, your Honor.

THE COURT: Now, have you talked this all over with Mr. Feldman-Rumpler?

MR. ROY: Yes, your Honor.

THE COURT: And have you read it?

MR. ROY: Yes.

THE COURT: And do you understand it?

MR. ROY: Yes, sir.

THE COURT: And here again, I suppose, this business about waiver of his rights to appeal unless otherwise -- well, I need to tell you that if I sentence you, I will tell you that you have a right to appeal and that's true, you do, but so long as my sentence falls within those contemplated -- though I'm not part of the bargain, so long as the result falls within what's contemplated by this plea agreement, unless there's a

manifest injustice, you are stuck with the sentence that I impose upon you.

Do you understand that?

MR. ROY: Yes, your Honor.

THE COURT: Now, I need to have Mr. Yoon tell me the information that, just like the others, you need to listen to Mr. Yoon.

MR. YOON: Yes, your Honor.

Mr. Roy is accountable for 760 oxycodone, 30 milligram pills. That is between 14.92 grams and 59.70 grams of oxycodone. That is equivalent to between 100 and 400 kilograms of marijuana.

The base offense level, your Honor, is 26, um, a base level of 26. The range would be 78 to 97 months with the high being 97 months. With acceptance, your Honor, the range would be 57 months to 71 months, the highest being 71. With the amendment, your Honor, the range would be 46 to 57 months, 57 being the highest. In this case, pursuant to a plea agreement, the government will be recommending 46 months.

THE COURT: All right. Let's start with the worst. Based upon what he's told me, I can, under the Constitution, sentence you to 97 months in prison.

Do you understand that?

MR. ROY: Yes.

THE COURT: I'm not saying I will, but I'm not bargaining, I can go up to 97 months and the plea agreement still stands in effect. Do you understand that?

MR. ROY: Yes, your Honor.

THE COURT: The range, as it now stands, is 57 to 71 months. With this amendment, which the government will go for, the range becomes 46 to 57 months and they promise you, if you do all the stuff in the plea agreement and plead guilty, that they will recommend to me that I sentence you to 46 months in prison.

Do you understand that?

MR. ROY: Yes, your Honor.

THE COURT: Now, other than this plea agreement and the promises that they make to you in this plea agreement, has anyone promised you anything to get you to plead guilty?

MR. ROY: No, your Honor.

THE COURT: Has anybody threatened you with anything to get you to plead guilty?

MR. ROY: No, your Honor.

THE COURT: Are you covering up for someone else by pleading guilty?

MR. ROY: No.

THE COURT: Do you know that if you're not a

citizen of the United States, that pleading guilty to this crime may have the consequence of being deported from the United States, denied naturalization under the laws of the United States, denied admission under the laws of the United States. Do you know that?

MR. ROY: Yes.

THE COURT: Have you had enough time to talk this all over with Ms. Feldman-Rumpler?

MR. ROY: I did.

THE COURT: Has she been a good attorney for you, gotten for you the things that are your rights under the law?

MR. ROY: An excellent attorney.

THE COURT: Are you satisfied with her representation?

MR. ROY: Yes, your Honor.

THE COURT: Do you still want to plead guilty?

MR. ROY: Yes.

THE COURT: Why?

MR. ROY: Because I'm guilty.

THE COURT: All right.

Here's what we're going to do now. Mr. Yoon, focusing on the essential elements of the crime, is going to telling me, with respect to you five, and he

may have to mention other people, but he's just going to tell me briefly with respect to you five -- and so I'm clear, as to these five there's no enhancements but for the amount of oxycodone. I mean that's what we're talking about?

MR. YOON: Yes, your Honor.

THE COURT: I mean, and a career offender for Mr. Chisholm, but that's not a matter of proof at trial, that's a matter of his record.

MR. YOON: Yes, your Honor, that's correct.

THE COURT: All right. So he's going to explain to you -- and you don't have to mention his record again, but he's going to explain what evidence he thinks he can put before the jury as to you. When he's done -- and I'm going to go sit down now, I'm going to ask each one of you, "Do you understand what he said?" And he may mention things that you don't know that don't pertain to you. But as to you, I'm going to say, "Now, do you understand, as to you, what he said?" And you can say "Yes," "No." And don't agree to anything that you're not agreeing to, because I'm going to then say to you, "Well, is that true?" If you say to me, "It is true," I'm going to believe it, I'm going to think that actually happened, the person or persons, they're guilty of that, what the crime is.

All right. Briefly, Mr. Yoon.

MR. YOON: Yes, your Honor. The government, through evidence, would show that between November of 2012 and May of 2013, through intercepted phone calls, through law enforcement visual electronic surveillance and also witness testimony, that the defendants, through those phone calls and in their meetings, agreed to possess with intent to distribute oxycodone and also to distribute oxycodone. The defendants, through those phone calls, did agree to in fact possess with intent to distribute and to distribute oxycodone.

Additionally, your Honor, the government would be able to prove that these defendants bought oxycodone from Michael Bourque in the amounts as were indicated during the Court's conversations with the defendants.

The defendants, having bought that oxycodone, the 30 milligram pills from Michael Bourque, they were purchased to be sold to retail pill customers and in fact were sold to such customers. That would be the evidence at trial, your Honor.

THE COURT: Um --

MR. DEMISSIE: One moment, your Honor?

THE COURT: Of course you may.

(Pause.)

THE COURT: Well, while he's conferring,

Mr. Kinney, did you hear what Mr. Yoon says?

MR. KINNEY: Yes, your Honor.

THE COURT: Do you understand it?

MR. KINNEY: Yes.

THE COURT: And do you understand that if that's true, if you tell me that's true, you'll be agreeing to the amounts of oxycodone that were mentioned earlier while I was talking about how the sentence would potentially work out.

You understand that?

MR. KINNEY: Yes, your Honor.

THE COURT: Are those things true?

MR. KINNEY: Yes, your Honor.

THE COURT: All right.

Mr. Akasa, again I just want you to understand that if you agree to this, you're agreeing to the specific amounts that he talked about when I was asking him about the potential sentence.

Do you understand what he had to say with respect to you?

MR. AKASA: Yes, I do.

THE COURT: Is that true?

MR. AKASA: Yes, it is.

THE COURT: And, Mr. Chisholm, I want you to be clear, if you agree to this, you're agreeing to the

amounts that we went over when I was talking to you individually and asking about the potential sentence.

So let me ask you, did you understand what he had to say?

MR. CHISHOLM: Yes.

THE COURT: Now, as it pertains to you, is that true?

MR. CHISHOLM: Yes.

THE COURT: All right.

Back to Mr. Goolst. Mr. Goolst, one of the things here is, if you agree to this, you're agreeing to the amounts that he described when he was explaining to me the potential sentence that might be imposed upon you.

Do you understand that?

MR. GOOLST: I do.

THE COURT: Do you understand what he had to say?

MR. GOOLST: Yes.

THE COURT: Is what he had to say true?

MR. GOOLST: Yes.

THE COURT: All right.

Mr. Roy, understanding that we're -- you would be agreeing to the amounts as he earlier explained them, do you understand what he had to say?

MR. ROY: Yes, your Honor.

THE COURT: Are those things, as they pertain to you, are they true?

MR. ROY: Yes.

THE COURT: Thank you.

All right. Excuse me. I find that Mr. John Kinney, Mr. Philip Goolst, Mr. David Akasa, Mr. Brian Chisholm, and Mr. Michael Roy, knowingly, intelligently, and voluntarily are exercising their right to plead guilty to this one-count indictment, and the clerk may accept the plea.

All of this is serious, gentlemen, but this is most serious. The clerk, one by one, is going to ask you -- and she's going to say, "You earlier pleaded not guilty, do you want to change your plea to guilty?" If you want to go through with this, you say "yes." If you say "no," that's fine, we'll get you set for trial here. If you say, "yes," she'll say, "How do you now plead, guilty or not guilty?" If you say "guilty" when the Clerk is asking you, you're guilty, no taking it back or starting over.

Do you understand, Mr. Kinney?

MR. KINNEY: Yes.

THE COURT: Do you understand, Mr. Goolst?

MR. GOOLST: Yes.

THE COURT: Do you understand, Mr. Akasa?

MR. AKASA: Yes.

THE COURT: Do you understand, Mr. Chisholm?

MR. CHISHOLM: Yes.

THE COURT: Do you understand, Mr. Roy?

MR. ROY: Yes.

THE COURT: The Clerk may accept the pleas.

THE CLERK: Mr. Kinney, you have previously pled not guilty to a one-count indictment charging you with conspiracy to possess with intent to distribute and to distribute oxycodone in violation of Title 21, United States Code Section 846. Do you now wish to change your plea, yes or no?

MR. KINNEY: Yes.

THE COURT: How do you now plead to Count 1, guilty or not guilty?

MR. KINNEY: Guilty.

THE CLERK: Mr. Goolst, you have previously pled not guilty to a one-count indictment charging you with conspiracy to possess with intent to distribute and to distribute oxycodone in violation of Title 21, United States Code, Section 846. Do you now wish to change your plea, yes or no?

MR. GOOLST: Yes.

THE COURT: How do you plead to Count 1, guilty or not guilty?

MR. GOOLST: Guilty.

THE COURT: Mr. Akasa, you have previously pled not guilty to a one-count indictment charging you with conspiracy to possess with intent to distribute and to distribute oxycodone in violation of Title 21, United States Code, Section 846. Do you now wish to change your plea?

MR. GOOLST: Yes.

THE COURT: How do you now plead to Count 1, guilty or not guilty?

MR. GOOLST: Guilty.

THE CLERK: Mr. Chisholm, you have previously plead not guilty to a one-count indictment charging you with conspiracy to possess with intent to distribute and to distribute oxycodone in violation of Title 21, United States Code, Section 846. Do you now wish to change your plea, yes or no?

MR. CHISHOLM: Yes.

THE COURT: How do you now plead to Count 1, guilty or not guilty?

MR. CHISHOLM: Guilty.

THE COURT: Mr. Roy, you have previously pled not guilty to a one-count indictment charging you with conspiracy to possess with intent to distribute and to distribute oxycodone in violation of Title 21, United

States Code, Section 846. Do you now wish to change your plea?

MR. ROY: Yes.

THE COURT: How do you now plead to Count 1, guilty or not guilty?

MR. ROY: Guilty.

THE COURT: Very well. Let's set the time for sentencing.

In Mr. Kinney's case, I propose the 9th of July at 2:00 p.m. Is that satisfactory, counsel?

MR. McCORMICK: Your Honor, that is my vacation week.

THE COURT: All right. We'll pick another date.

THE CLERK: Tuesday, July 22nd?

MR. McCORMICK: That's fine.

THE COURT: And for the government, Mr. Yoon?

MR. YOON: Yes, sir, that's fine. Thank you.

THE COURT: That's the date.

And as to Mr. Goolst, sentencing on July 10th at 2:00 p.m. Is that satisfactory?

MR. DEMISSIE: Yes, your Honor.

MR. YOON: Yes, your Honor.

THE COURT: Very well.

Mr. Akasa, July 14th, at 2:00 p.m.?

MR. BARRON: Yes, your Honor.

MR. YOON: Yes, your Honor.

THE COURT: Very well.

Mr. Chisholm, July 15th, at 2:00 p.m.?

MR. PALMER: Your Honor, that's my vacation week.

THE COURT: We'll pick another date.

THE CLERK: July 9th?

MR. PALMER: That's fine.

THE COURT: All right, July 9th at 2:00 p.m. I didn't hear the government?

MR. YOON: Yes, that's fine.

THE COURT: Very well.

And, Mr. Roy, July 21st at 2:00 p.m.?

MS. FELDMAN-RUMPLER: That's fine, your Honor.

MR. YOON: That's fine, your Honor. Thank you.

THE COURT: Very well.

Now, the defendants are in custody and they're remanded to custody. Counsel, you're excused, but would you, before you leave the courthouse today, go by probation, tell them of this changed circumstance so that they may start a presentence report. Thank you. They're remanded to custody.

(10:20, first five leave.)

THE COURT: The Court will take a brief recess while we set up. We'll recess.

(10:20 a.m., break.)

(***EXCERPT*** ends.)

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes, of the aforementioned ***EXCERPT***, before Judge William G. Young, on Monday, April 14, 2014, to the best of my skill and ability.

/s/ Richard H. Romanow 07-14-14
__________________________
RICHARD H. ROMANOW Date